Matter of Santiago (2023 NY Slip Op 02520)

Matter of Santiago

2023 NY Slip Op 02520

Decided on May 10, 2023

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 10, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
COLLEEN D. DUFFY
BETSY BARROS
JOSEPH A. ZAYAS, JJ.

2021-02345

[*1]In the Matter of Jose Gabriel Santiago, an attorney and counselor-at-law. Grievance Committee for the Tenth Judicial District, petitioner; Jose Gabriel Santiago, respondent. (Attorney Registration No. 4356630)

DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Tenth Judicial District. The Grievance Committee commenced this disciplinary proceeding pursuant to 22 NYCRR 1240.8 by the service and the filing of a notice of petition and a verified petition, both dated March 30, 2021, and the respondent served and filed a verified answer, verified on April 19, 2021. By decision and order on application dated June 24, 2021, this Court referred the matter to the Honorable Charles J. Thomas, as Special Referee, to hear and report. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the First Judicial Department on October 25, 2005.

Catherine A. Sheridan, Hauppauge, NY (Michael Fuchs of counsel), for petitioner.
Foley Griffin, LLP, Garden City, NY (Thomas J. Foley of counsel), for respondent.

PER CURIAM.

OPINION & ORDER
The Grievance Committee for the Tenth Judicial District served the respondent with a notice of petition and a verified petition, both dated March 30, 2021, containing five charges of professional misconduct. The respondent served and filed a verified answer verified on April 19, 2021, essentially denying all the charges in the petition but admitting to some of the factual allegations. Subsequently, the Grievance Committee served and filed a statement of disputed and undisputed facts dated April 28, 2021, and requested the appointment of a special referee for a hearing in view of the disputed facts. The respondent served and filed a response dated May 24, 2021, concurring with the Grievance Committee's statement. By decision and order on application dated June 24, 2021, this Court referred the matter to the Honorable Charles J. Thomas, as Special Referee, to hear and report. After a hearing, the Special Referee submitted a report dated January 3, 2022, in which he sustained all five charges. The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as the Court deems just and proper. The respondent, through counsel, submits a response which does not oppose the motion to confirm or otherwise challenge the Special Referee's findings, and submits that a public censure would be the appropriate sanction. The respondent argues that, in the alternative, if the Court is inclined to impose a suspension, the suspension should be stayed under certain proposed conditions.
In view of the evidence adduced at the hearing, including the respondent's admissions, we find that the Special Referee properly sustained all five charges in the petition.
The Petition 
The verified petition contains charges of professional misconduct concerning the respondent's representation of Ydalia Rubio-DeNavarro. The petition alleges that on May 19, 2015, the respondent entered into a written retainer agreement with Rubio-DeNavarro to prosecute a wrongful termination and retaliation action against Rubio-DeNavarro's former employer. The retainer agreement provided for a $5,000 retainer fee as well as a one-third contingency fee. A second retainer agreement, dated May 19, 2015, was executed with the same parties to prosecute an action against Rubio-DeNavarro's former employer for unpaid wages. The second retainer agreement provided for a one-third contingency fee for that action.
On December 13, 2015, the respondent commenced an action in the United States District Court for the Eastern District of New York (hereinafter the EDNY), captioned Ydalia Rubio-DeNavarro, on behalf of herself and all others similarly situated v John Harvard's Brew House New York, LLC and Centerplate Inc. , under Case No. 15-cv-7-91 (hereinafter the lawsuit). Two of the causes of action in the lawsuit were brought on behalf of Rubio-DeNavarro, individually, alleging wrongful termination and retaliation. The third cause of action, based on alleged unpaid wages in violation of New York Labor Law § 650 et seq. , was a putative class action brought on behalf of Rubio-DeNavarro and other unnamed employees.
On June 6, 2017, the parties to the lawsuit entered into a confidential settlement agreement (hereinafter the settlement). A "confidential addendum" to the settlement was sworn to by Rubio-DeNavarro on March 16, 2018. The confidential addendum did not modify the substantive terms of the settlement. Pursuant to the settlement, the defendants in the lawsuit agreed to pay Rubio-DeNavarro the sum of $20,000, in two payments of $10,000 each, and the class a total of $50,000 for unpaid wages.
By "Stipulation Of Voluntary Dismissal Pursuant To F.R.C.P. 41(a)(1)(A)(ii)" (hereinafter the stipulation), dated June 7, 2017, the respondent and counsel for the defendants in the lawsuit advised the EDNY that the lawsuit was being voluntarily dismissed. The stipulation did not refer to the settlement, and the respondent did not advise the EDNY of the settlement with the putative class.
In or about November 2018, the respondent received two checks from the defendants in the lawsuit which satisfied the $20,000 portion of the settlement pertaining to Rubio-DeNavarro's individual claims: one check dated November 14, 2018, payable to Rubio-DeNavarro, in the amount of $6,008.05 ($10,000 minus $3,991.95 for withholding), and a second check dated November 19, 2018, payable to Rubio-DeNavarro, in the amount of $10,000. The respondent did not forward these two checks to Rubio-DeNavarro.
By check dated November 19, 2018, the defendants in the lawsuit paid the respondent the sum of $50,000 as payment for the putative class action portion of the settlement. On December 6, 2018, the check was deposited into the respondent's attorney trust account, maintained at Capital One Bank. In or about December 2018, the respondent issued a check from his attorney trust account, dated December 13, 2018, payable to himself, in the amount of $12,500, as partial payment of his legal fee in connection with the putative class action portion of the settlement. The respondent issued another check, dated December 27, 2018, payable to himself, in the amount of $3,500, as the balance of his legal fee in connection with the putative class action portion of the settlement.
In or about January 2020, after Rubio-DeNavarro filed a complaint with the Grievance Committee alleging that she had not received her settlement funds, the respondent requested that the defendants in the lawsuit issue replacement checks in the sums of $6,008.05 and $10,000 to Rubio-DeNavarro because the original two checks were outdated. In or about January 2020, the defendants in the lawsuit issued two new checks, both dated January 21, 2020, payable to Rubio-DeNavarro, as replacements for the checks dated November 14, 2018, and November 19, 2018. The respondent forwarded the two checks to Rubio-DeNavarro on or about January 23, 2020.
On August 10, 2020, the respondent issued checks totaling $34,000 ($50,000 minus the respondent's legal fee of $16,000), to the 209 members of the putative class, representing their individual share of the putative class settlement. The respondent took no steps to identify the putative class members until in or about April or May 2020, after an investigation into his professional misconduct was commenced by the Grievance Committee. The respondent did not know the identity of the putative class members until in or about June 2020.
At no time did the EDNY certify the "class," appoint the respondent as class counsel, approve the settlement with respect to the putative class, or approve the respondent's legal fee in connection with the settlement of the putative class action, all of which are required by Federal Rules [*2]of Civil Procedure rule 23.
The respondent was never retained by any putative class member, with the exception of Rubio-DeNavarro.
By reason of the foregoing, charge one alleges that the respondent engaged in conduct involving misrepresentation; charge two alleges that the respondent collected an illegal attorney's fee from litigants he did not represent; charge three alleges that the respondent engaged in conduct that is prejudicial to the administration of justice; charge four alleges that the respondent failed to promptly deliver settlement funds to his client; and charge five alleges that the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of rules 1.5(a), 1.15(c)(4), and 8.4(c), (d), and (h) of the Rules of Professional Conduct (22 NYCRR 1200.0).
The Hearing Evidence 
Prior to the hearing, the respondent admitted the factual allegations of the petition, and at the hearing he testified on his own behalf in mitigation. The respondent testified that after working for more than one year as an associate for a law firm that practiced only labor and employment law, he opened his own practice concentrating on the same field. At the time that he was representing Rubio-DeNavarro, he was in the process of winding down his practice due to personal financial and familial difficulties. According to the respondent, these difficulties caused him to suffer from nervousness, depression, and anxiety. The respondent sought professional treatment on and off, but did not maintain consistent treatment until after the disciplinary investigation.
In November 2018, the respondent obtained employment with an outsource human resource company, Alcott HR (hereinafter Alcott), first as a human resource compliance manager, and approximately six months later, he was promoted to general counsel, a position that he still held at the time of the hearing. The respondent testified that his achievement at Alcott demonstrated his commitment and success in addressing his mental health. Regarding Rubio-DeNavarro's complaint, the respondent testified further that he was not as involved as he should have been in the settlement, that he should have notified the putative class members of the proposed settlement so that they could have opted in or out, and that he should have obtained court approval for the class action settlement.
Findings and Conclusion 
In view of the evidence adduced at the hearing, and the respondent's admissions, we find that the Special Referee properly sustained all five charges. Accordingly, the Grievance Committee's motion to confirm the Special Referee's report is granted.
While the respondent testified about certain personal stress in his life during the time of his misconduct, he failed to explain why such issues only adversely affected his client's matter and not his career advancement. The question is not whether the respondent suffered personal challenges around the time that he was representing Rubio-DeNavarro, but whether such challenges had a causal relationship to the misconduct. The timeline, as he testified to, suggests that it did not. In November 2018, the respondent received two settlement checks made payable to Rubio-DeNavarro and one settlement check for the putative class. He failed to promptly distribute the settlement funds to the clients, but paid himself. Also in November 2018, he was hired by Alcott as a human resource compliance manager and was doing so well there that they promoted him to general counsel approximately six months later (in approximately May 2019). This was before he began regular treatment in November 2019 for his mental health issues. The respondent did not explain how his personal challenges prevented him from sending the settlement checks to Rubio-DeNavarro but did not prevent him from doing so well at Alcott that the company promoted him to general counsel after six months of employment. Even after he was thriving at Alcott, the respondent made no attempt to identify the putative class members and distribute the settlement funds until well after Rubio-DeNavarro filed a grievance complaint against him. For approximately two years, the respondent held onto the settlement funds belonging to 209 putative class members who had worked more than 10 hours a day in the restaurant business, from November 2009 through May 6, 2015, and were not properly compensated, while he paid himself immediately.
We find in significant aggravation that when the respondent eventually distributed the settlement funds to the putative class members, after he was already being investigated by the Grievance Committee and had successfully addressed his mental health issues, he further misrepresented in his letter to the individual 209 putative class members that "[a] settlement on behalf of the class was reached and approved by the court." This was simply not true. Furthermore, while the respondent admitted that he collected illegal fees from litigants that he did not represent, [*3]the record does not reflect any remedial effort by the respondent to return the illegal fees he collected to those litigants.
Under the totality of the circumstances, we conclude that the respondent's conduct warrants his suspension from the practice of law for a period of two years. As to the respondent's request to stay the suspension under certain proposed conditions, we find no basis to grant such request.
LASALLE, P.J., DILLON, DUFFY, BARROS and ZAYAS, JJ., concur.
ORDERED that the Grievance Committee's motion to confirm the Special Referee's report is granted; and it is further,
ORDERED that the respondent, Jose Gabriel Santiago, is suspended from the practice of law for a period of two years, commencing June 9, 2023, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than December 9, 2024. In such application (see 22 NYCRR 1240.16, 691.11), the respondent shall furnish satisfactory proof that, during the period of suspension, he (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11(a), and (4) otherwise properly conducted himself; and it is further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Jose Gabriel Santiago, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Jose Gabriel Santiago, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Maria T. Fasulo
Clerk of the Court